Maria Crimi Speth 012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000
mcs@jaburgwilk.com

Mike Rodenbaugh
California Bar No. 179059
Erin D. Vivion
California Bar No. 262599
RODENBAUGH LAW
548 Market Street
San Francisco, CA  94104
(415) 738-8087
info@rodenbaugh.com
*(Pro Hac Vice Application to be filed)*

Attorneys for Plaintiff
Vanity.com, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VANITY.COM, INC., a Nevada corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>VANITY SHOP OF GRAND FORKS, INC., a North Dakota corporation,<br><br>　　　　　Defendant. | Case No.  2:12-cv-01446-JAT<br><br>**PLAINTIFF VANITY.COM, INC.'S MOTION FOR STAY AND MEMORANDUM AND POINTS OF AUTHORITIES** |

Plaintiff Vanity.com, Inc. moves the Court to stay all proceedings in this action until an identical, prior-filed action in the Northern District of California is resolved; or in the alternative, if the Court does not grant a stay of the proceedings, then for an extension of time to answer or otherwise respond to Defendant's counterclaims.

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.     FACTS**

This case centers upon the *vanity.com* domain name ("Domain Name"), a valuable intellectual property asset owned by Plaintiff and its principal, Ms. JoLynn Frederick (collectively "Plaintiff") since 1995. For more than 17 <u>years</u>, Plaintiff has maintained the domain name registration and has made various efforts to develop a website to be hosted at the domain name, unrelated to Defendant's low-budget retail clothing business.

Plaintiff owns a USPTO trademark registration for VANITY.COM, Reg. No. 3720766, covering "On-line journals, namely, blogs featuring cosmetic procedures and surgery related content." Plaintiff has used the Domain Name and trademark for this purpose, and intends to continue doing so. For a number of years, Plaintiff also used the name in conjunction with a business providing users "vanity.com" email addresses (Compl. ¶ 16). For the past several years, Plaintiff has employed several web development professionals to build out a website by which professionals would advertise their relevant "vanity" services, such as cosmetic surgery, personal training, nutrition, personal beauty and health care services. Plaintiff has made an ongoing and consistent effort to continue to further develop this business at the vanity.com Domain Name. (Compl. ¶ 17). The Domain Name has never been used to sell clothing, or any other goods related to those sold by Defendant.

Beyond dispute, the generic noun "vanity" has multiple inherently valuable, generic or descriptive meanings and uses entirely unrelated to Defendant's clothing business, and which have long predated Defendant's existence. Indeed, it was not until seventeen years <u>*after*</u> Plaintiff had registered the Domain Name that Defendant created this legal cloud on Plaintiff's title to the Domain Name property.

Defendant manufactures various clothing and accessories and operates specialty retail stores under "Vanity"-formative trademarks, and has procured U.S. federal trademark registrations for such goods. Defendant has offered online retail services at the

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

16538-1/MCS/MCS/1007628_v1

"evanity.com" domain name that it registered eight years ago in 2004, all the while co-existing with Plaintiff's registration and use of its Domain Name.  Yet, on May 15, 2012, without warning to Plaintiff, Defendant filed a Uniform Domain Name Dispute Resolution Policy ("UDRP") complaint with the National Arbitration Forum ("NAF") (Compl. ¶ 23).  In the UDRP complaint, Defendant alleged that the Domain Name is confusingly similar to Defendant's trademark, that Plaintiff has no legitimate rights to or interest in the Domain Name, and that Plaintiff registered and is using the Domain Name in bad faith.  (Compl. ¶ 24).  Defendant requested the remedy of transfer of the Domain Name from Plaintiff to Defendant.  (Compl. ¶ 25).

Upon learning of the UDRP complaint, on June 5, 2012, Plaintiff filed a civil action seeking declaratory relief in the U.S. District Court, Northern District of California, where the Plaintiff maintains its principal place of business.  (Exhibit 1, Declaration of Michael L. Rodenbaugh, Exh. A).[1]  Plaintiff then immediately sought a dismissal or suspension of the UDRP action via Notice to the provider in Minnesota (NAF) -- or ten additional days to answer. (Decl. of M. Rodenbaugh, Exh. C).  The panelist ignored the latter request completely, and provided no reasoning whatsoever to hear the case after notice this litigation was pending in the District Court, despite ample UDRP precedent cited to the panel, mandating a stay.  Instead, the panelist issued an opinion that clearly would be superseded by that litigation[2], completely ignored Vanity.com's United States trademark registration, employed tortured logic to find that the Domain Name property was registered for no legitimate purpose and in bad faith – and then granted the request for transfer.  (Decl. of M. Rodenbaugh, Exh. D).

---

[1] Plaintiff requests the court to take judicial notice of documents filed in the Northern District of California action, styled *Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, Case No. 12-cv-02912-SI, filed June 5, 2012.  Currently before the court in California is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed on August 2, 2012. In response, tomorrow Plaintiff will file an Amended Complaint (draft attached to Decl. of M. Rodenbaugh, as Exhibit B) which is materially identical to its Complaint filed in this action in Arizona (other than jurisdictional allegations).

[2] *See, e.g., Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626 (2nd Cir. 2003) ("[A]ny decision made by a panel under the UDRP is no more than an agreed-upon administration that is *not* given any deference . . .").

3

16538-1/MCS/MCS/1007628_v1

1    Upon issuance of this UDRP decision, in order to prevent transfer per the UDRP,
2    Plaintiff was required to file its instant Complaint in Arizona, despite having already
3    raised many of the identical issues with the district court in California. Pursuant to UDRP
4    Para. 4(k), a domain owner must file a federal lawsuit within 10 days of a decision
5    granting transfer -- in the forum selected by the complainant when filing the UDRP -- or
6    else the owner will lose the domain to transfer.[3]  Thus Plaintiff was forced to file the
7    instant action in Arizona because Defendant unilaterally chose the location of the
8    principal office of GoDaddy, the Registrar of the Domain Name, as the only forum
9    wherein a civil filing would prevent a transfer.

## II. THE COURT SHOULD GRANT A STAY OF THESE PROCEEDINGS

Applying the comity doctrine, also known as the "first to file" rule, this Court should grant Plaintiff's Motion for Stay. Under the "first to file" rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy. *E.g., Alltrade, Inc. v. Uniweld Products,* 946 F.2d 622, 625, 628-29 (9th Cir. 1991); *Pacesetter Sys. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982) (affirming decision of district court in second-filed action to decline

---

[3] *See* UDRP, para. 4(k) (Decl. of M. Rodenbaugh, Exh. E):

> If an Administrative Panel decides that your domain name registration should be . . . transferred, we will wait ten (10) business days . . . after we are informed . . . before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation . . . that you have commenced a lawsuit against the complainant *in a jurisdiction to which the complainant has submitted* under Paragraph 3(b)(xiii) of the Rules of Procedure. . . . If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name."

(Emphasis added.) *See also, Storey v. Cello Holdings*, 347 F.3d 370, 376-77 (2nd Cir. 2003); *Sallen v. Corinthians Licenciamentos LTDA,* 273 F.3d 14, 23 (1st Cir.2001); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona,* 330 F.3d 617, 625 (4th Cir. 2003); *Mann v. AFN Investments, Ltd.*, 2007 WL 2177030, *2 (S.D. Cal. 2007).

16538-1/MCS/MCS/1007628_v1

1  jurisdiction, as second declaratory judgment action only multiplied litigation); *Millennium Laboratories, Inc. v. Rocky Mountain Tox, LLC*, 2011 WL 347140, *2 (D. Ariz. 2011) (applying the "first to file" rule and granting motion to dismiss or stay and also transfer "for the convenience of the parties and witnesses" where actions in two districts were identical and there was "no good reason why the same alleged facts should be adjudicated through two lawsuits seeking effectively the same relief"); *see generally, Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183-84 (1952).

Application of the doctrine avoids placing unnecessary burden on the courts. It was designed to serve "the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 750 (9th Cir. 1979). Ultimately, a federal district court "possesses the inherent power to control its own docket and calendar." *Mediterranean Enterprises, Inc. v. Ssangyong Const. Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983), *citing Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936); *accord Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 864 (9th Cir.), *cert. denied,* 444 U.S. 827 (1979). In *Leyva,* the Ninth Circuit held:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

593 F.2d at 863. In such cases, the court may order a stay of the action pursuant to its power to control its docket and calendar, and to provide for a just determination of the cases pending before it.

In determining whether to issue a stay, the Ninth Circuit instructs a district court to weigh certain competing interests. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

16538-1/MCS/MCS/1007628_v1

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay. *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962), *citing Landis,* 299 U.S. at 254-55; *Palozie v. State Farm Mut. Auto. Ins. Co.*, 1996 WL 814533, *7 (D. Ariz. 1996) (granting motion to stay where independent proceedings occurring during the stay would help simplify and clarify the issues of the action). A stay may be the most efficient and fairest course when there are "independent proceedings which bear upon the case." *Leyva*, 593 F.2d at 863.

### A. A Stay Would Simplify the Issues

In examining the first *CMAX* factor, the court must determine whether the simplifying of issues can be expected to result from a stay such that "the orderly course of justice" is furthered. *Cohen v. Carreon*, 94 F.Supp.2d 1112, 1119 (D. Or. 2000) (finding all three *CMAX* factors favored a stay in a domain name dispute where the issues were nearly identical in the two proceedings, any delay did not cause damage because the preexisting case would resolve the issues, and proceeding with a second filed case would cause hardship because it would needlessly waste time, money, and resources).

Here the actions in the two forums are substantially similar, if not identical. The sole reason Plaintiff filed the instant action, subsequent to the identical action in California, was to prevent a transfer of Plaintiff's Domain Name property pursuant to the UDRP. Plaintiff was forced to file this action, or else lose its valuable property via transfer mandated by the grossly negligent UDRP decision. Defendant unilaterally chose this forum, rather than the forum where Plaintiff resides, solely to increase costs to Plaintiff in challenging the decision. Because Plaintiff registered the Domain Name in 1995, five years before the UDRP was enacted in 2000, it would be inherently unfair to subject Plaintiff to the terms of that policy allowing litigation only in a forum determined by Defendant. Furthermore, GoDaddy, the Registrar of the Domain Name headquartered in Scottsdale, has an enormous market share for domain name registrations. (Decl. of M.

1  Rodenbaugh, Exh. F). Thus that lone contact with this forum ought not override Plaintiff's
2  choice.
3     Per Defendant's reasoning, over half of all domain name registration disputes (i.e.,
4  disputes pertaining to tens of millions of domain name registrations) are subject to
5  jurisdiction in this district, only by virtue of a policy term in the UDRP allowing a
6  complainant to unilaterally and preemptively select the location of the Registrar as the
7  litigation forum, regardless of the facts of the case or the location or interests of the
8  parties. Allowing this action to proceed, when a preexisting action will resolve the same
9  issues presented here, is antithetical to the doctrine of comity. A stay of this action will
10 simplify the issues raised in the two actions by not allowing duplicative, wasteful
11 litigation to proceed; and thus a stay will further the interests of judicial economy.
12 Clearly, the first *CMAX* factor weighs in favor of granting a stay.

### B.   Neither Party Will Be Damaged if a Stay is Granted

A stay of this action will damage neither party in any way. Indeed, by *not* granting a stay, the Court would cause both parties to suffer significant damage, requiring the parties to litigate indistinguishable issues in two separate forums. Further, a slight delay in litigation is not sufficient reason for the court to deny a stay where a preexisting case would resolve the same issues before the court. *Cohen*, 94 F.Supp.2d at 1117-18 (finding that "[a]lthough [plaintiff] has a right to have his case heard as expeditiously as possible, that right is clearly outweighed in this case by the factors surrounding a preexisting case which concerns most of the same or substantially similar issues with almost identical parties and which will most likely clarify, if not resolve, the claims alleged in this case."). Thus, a stay will not cause damage, but rather will avoid significant damage to both parties by preventing duplicative and needless litigation. Thus, the second *CMAX* factor weighs in favor of granting a stay.

### C.   Plaintiff Will Suffer Hardship if Stay is Not Granted

Plaintiff would bear a heavy, undue burden if a stay is not granted. Defendant is a

Jaburg & Wilk, P.C.
Attorneys at Law
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012

7

16538-1/MCS/MCS/1007628_v1

large corporation that operates approximately 200 brick and mortar stores in 26 states across the country, and has even further sales via its online e-commerce website. (Decl. of M. Rodenbaugh, Exh. G). Defendant undoubtedly has a disproportionate amount of money and resources to dedicate to litigation as opposed to Plaintiff's corporation, comprising of one principal. (Decl. of M. Rodenbaugh, Para. 9.) Further, while Defendant certainly has the means to conduct litigation in both California and/or Arizona, as it is accustomed to conducting business in over half the states in the country, it has no real interest in litigating in either forum. Defendant is burdened equally by litigation in California or Arizona, as it operates physical stores in neither state, and argues that it has no relevant business contacts in either state. Defendant's sole aim in choosing this forum is to increase Plaintiff's costs to challenge the UDRP decision.

Indeed, there is stark risk of undue hardship to Plaintiff if this action proceeds in Arizona as opposed to California. Plaintiff maintains its principal place of business in California, and so has clear interest in litigating where it and its witnesses are located. Litigation in Arizona also requires Plaintiff to hire local counsel authorized to practice in the state. Furthermore, because this action is based on the same facts, evidence and witnesses central to Plaintiff's claims in California, discovery would be duplicated and witnesses would need to be deposed twice instead of only once--and compelled to testify at trial twice instead of only once. These witnesses include not only the parties, but also any non-party witnesses, including witnesses to Plaintiff's business development activities, the value of Plaintiff's domain name, and the various inherent meanings of the word 'vanity' having nothing to do with Defendant. There is no justification for potentially requiring such duplication of time, effort and expense, when the parties can simply proceed in the California forum, selected by Plaintiff in the first filed action.

While both parties may be slightly inconvenienced by this mirrored litigation in Arizona, Plaintiff is *not* burdened with out-of-state costs and expense litigating in California, where it filed the first of these two actions. Defendant suffers no additional harm litigating in California rather than Arizona. Therefore, Plaintiff will suffer the

8

greater hardship if litigation were to proceed in this duplicative Arizona action. *Cohen*, 94 F.Supp.2d at 1118-19 (finding a denial of stay would place an overwhelming burden on defendants where the same issues were being litigated in two actions, the second action would require hiring additional counsel, and the second action would allow for a second chance at discovery).

The Domain Name was acquired five years prior to the enactment of the UDRP in 2000, by which Defendant unilaterally chose this forum for challenge to the UDRP decision. Neither party has any significant presence in Arizona. GoDaddy in fact has over a 50% market share in all domain name registrations, with over 30 million names registered. (Decl. of M. Rodenbaugh, Exh. F.) So, it would be nonsensical, duplicative and burdensome for this case to proceed here, while the identical issues are currently being litigated in California. Allowing this action to proceed, in a forum where neither party has a presence or relevant contact, would be burdensome for both parties and their witnesses, duplicating their efforts in discovery, pre-trial conferences, preparation of trial exhibits, proposed jury instructions, and of course at both trials. This would be counterproductive for the parties, for the witnesses, and the Court, and is simply unnecessary. Thus, because Plaintiff would suffer unnecessary hardship if forced to assume the burden of duplicative litigation in California, as well as here in the forum of Defendant's choosing, the final *CMAX* factor weighs in favor of granting a stay.

**III.     THE COURT SHOULD GRANT A STAY AS OPPOSED TO A DISMISSAL**

Finally, while all three of the *CMAX* factors weigh in favor of a stay, a stay of the action is further warranted in lieu of a dismissal, due to the unique facts present in this case. In *Alltrade,* 946 F.2d at 629, the parties were involved in a trademark dispute and in two different fora sought an appeal of a Trademark Trial and Appeal Board (an administrative body whose decisions are reviewable by the district courts) decision regarding cancellation of a mark. There, the Ninth Circuit upheld the district court

9

decision to adhere to the first to file rule and decline jurisdiction. However, the Ninth Circuit reversed the district court's decision to dismiss, in favor of granting a stay.

There, the second filed action, in Florida, was being challenged on statute of limitations based jurisdictional grounds. The Court held that, "[i]n such cases, where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed." *Alltrade,* 946 F.2d at 629, *quoting Asset Allocation & Mgt. v. Western Employers Ins.,* 892 F.2d 566, 571 (7th Cir. 1989) ("Granted, the statute of limitations problems may not be serious.... But why take chances? It is simpler just to stay the second suit".) The Court reasoned that whether the Florida court were to dismiss or allow the action, in either case, the stay in the Ninth Circuit could be lifted at any time. Likewise here, a stay is appropriate despite the personal jurisdiction challenges Defendant has made in the California action, as, while unlikely, if the court were to dismiss that action, the Arizona stay could be lifted, allowing the case to proceed.

Further warranting stay as opposed to dismissal, are the unique circumstances surrounding the status of the Domain Name and the UDRP decision granting transfer. Pursuant to the UDRP policy, if the Arizona action were to be dismissed, the registrar of the Domain Name would be instructed to immediately complete transfer of the Domain Name to Defendant. *See* UDRP, Para. 4(k). The transfer would completely subvert the status quo with respect to this valuable property, and would be executed before any entry of final determination on the actions. This would accomplish Defendant's ultimate goal, and is the very action that Plaintiff seeks to prevent by filing the two pending actions. Thus, because a dismissal of this action would result in the immediate seizure of Plaintiff's Domain Name property, the title to which is the very subject of this litigation, Plaintiff respectfully submits that the Court would serve the interests of judicial efficiency and justice by granting a stay of this action.

16538-1/MCS/MCS/1007628_v1

## IV.   IN THE ALTERNATIVE, PLAINTIFF REQUESTS AN EXTENSION OF TIME TO ANSWER

If the Court is not inclined to grant a stay of the instant proceedings, then Plaintiff respectfully requests an extension of time in which to answer the counterclaims filed by Defendants, to a date fourteen days from any order denying this Motion.

## V.   CONCLUSION

Plaintiff asks this Court to grant a stay of all proceedings in this court, pending resolution of the identical federal action in California.  Only a stay would offer appropriate relief, because dismissal of this action would result in the immediate transfer of the Domain Name by GoDaddy, pursuant to UDRP, Para. 4(k).  That would constitute an unwarranted taking of Plaintiff's property without fair hearing, and would completely reverse the status quo between these two US trademark registrants.  As such, Plaintiff respectfully requests this Court to stay these proceedings until such time as a final resolution has been reached in the California action.

Plaintiff alternatively requests an extension of time to answer the counterclaims filed by Defendant on July 26, 2012.  (Defendant's Answer and Counterclaim, Docket #13).

Plaintiff's counsel has met and conferred by telephone with Defendant's counsel about the relief requested in this motion, and the reasoning therefor.  However, Defendant refused to consent either to a stay of these proceedings, or to an extension of time to answer the counterclaims.

11

16538-1/MCS/MCS/1007628_v1

Dated:   August 15, 2012

**JABURG & WILK, P.C.**
3200 N. Central Ave.
Suite 2000
Phoenix, AZ 85012


s/Maria Crimi Speth
Maria Crimi Speth

**RODENBAUGH LAW**

Mike Rodenbaugh
RODENBAUGH LAW
584 Market Street
San Francisco, CA  94104
*(Pro Hac Vice Application to be filed)*

Attorneys for Plaintiff Vanity.com, Inc.

*Certificate of Service*

I hereby certify that on the 15th day of August, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Brian W. LaCorte
Andrea Stone
BALLARD SPAHR LLP
1 East Washington Street
Suite 230
Phoenix, Arizona  85004
lacorteb@ballardspahr.com
stonea@ballardspahr.com

Antoinette M. Tease
ANTOINETTE M. TEASE, P.L.L.C.
175 N. 27th Street
Suite 1206
Billings, MT  59101
toni@teaselaw.com
(Pro Hac Vice)

Attorneys for Defendant


s/ Maria Crimi Speth

12

16538-1/MCS/MCS/1007628_v1